1  **LEE PHILLIPS**
   Law Office of
2  Lee Phillips, P.C.
   224 E. Birch Avenue
3  Flagstaff, AZ 86001
   (928) 779-1560
4  (928) 779-2909 Facsimile
   State Bar No.  009540
5
   **REGINALD T. SHUFORD**
6  American Civil Liberties Union Foundation
   125 Broad Street, 18th Floor
7  New York, NY 10004
   (212) 549-2613
8
   **DAN POCHODA**
9  American Civil Liberties Union of Arizona
   2536 N. 12th St.
10 Phoenix, AZ  85006
   (602) 532-0486
11 (602) 508-0258 Facsimile

12 Attorneys for Plaintiffs

13

14           **UNITED STATES DISTRICT COURT**

15          **FOR THE DISTRICT OF ARIZONA**

16

17                                    )
                                       )   CIV 01-1463 PHX-LOA
18 **VERONICA ARNOLD,** on behalf of  )
   herself and all other persons similarly )  **AMENDED COMPLAINT FOR**
19 situated, et al.,                   )   **DECLARATORY AND INJUNCTIVE**
                                       )   **RELIEF AND MONETARY**
20 **ANTHONY DORSETT,** on behalf of  )   **DAMAGES FOR VIOLATION OF**
   herself and all other persons similarly )  **PLAINTIFFS' CIVIL RIGHTS**
21 situated, et al.,                   )   **INCLUDING ILLEGAL SEARCH**
                                       )   **AND SEIZURE, DENIAL OF EQUAL**
22                                     )   **PROTECTION OF THE LAW, THE**
   **VINCENT EDWARDS,** on behalf of  )   **RIGHT TO TRAVEL, TITLE VI OF**
23 herself and all other persons similarly )  **THE CIVIL RIGHTS ACT OF 1964**
   situated, et al.,                   )   **and 42 U.S.C. 1983**
24                                     )
                                       )   **Re: Racial Profiling / Class Action**
25 **JIM LEE,** on behalf of herself and all )
   other persons similarly situated, et al., )

                          1

Create PDF with GO2PDF for free, if you wish to remove this line, click here to buy Virtual PDF Printer

**JESUS SAGRERO,** on behalf of herself
and all other persons similarly situated, et
al.,

**RAUL SALAZAR,** on behalf of herself
and all other persons similarly situated, et
al.,

**GREGORY STEPHEN,** on behalf of
herself and all other persons similarly
situated, et al.,

**FRANK VILAS,** on behalf of herself and
all other persons similarly situated, et al.,

Plaintiffs,

v.

**ARIZONA DEPARTMENT OF
PUBLIC SAFETY (DPS),**

**GOVERNOR JANE HULL,** individually
and in her official capacity as Chief Officer
of the Arizona Department of Public
Safety (DPS),

**DENNIS GARRETT,** individually and in
his official capacity as Director of the
Arizona Department of Public Safety
(DPS),

**LT. COLONEL WILLIAM REUTTER,**
individually and in his official capacity as
Assistant Director, Highway Patrol
Division of the Arizona Department of
Public Safety (DPS),

**JOHN ADAMS,** individually and in his

Create PDF with GO2PDF for free, if you wish to remove this line, click here to buy Virtual PDF Printer

official capacity as an Arizona Department )
of Public Safety (DPS) Patrolman,       )
                                         )
**JEFF BROWNLEE,** individually and in   )
his official capacity as an Arizona      )
Department of Public Safety (DPS)        )
Patrolman,                               )
                                         )
**CASEY KASUN,** individually and in his )
official capacity as an Arizona Department )
of Public Safety (DPS) Patrolman,        )
                                         )
**HOWARD McDONALD,** individually        )
and in his official capacity as an Arizona )
Department of Public Safety (DPS)        )
Patrolman,                               )
                                         )
**STEVEN SHROUFE,** individually and in  )
his official capacity as an Arizona      )
Department of Public Safety (DPS)        )
Patrolman,                               )
                                         )
**JOHN and JANE DOES, 1-50,**            )
individually and in their official capacity )
as an Arizona Department of Public Safety )
(DPS) Patrolmen,                         )
                                         )
                    Defendants.          )
                                         )
                                         )
                                         )
_____ )

///

///

///

Create PDF with GO2PDF for free, if you wish to remove this line, click here to buy Virtual PDF Printer

## COMPLAINT AND JURY DEMAND

**I.**     **Nature of the Case**

Plaintiffs, Black and Hispanic motorists who were traveling on the interstate highways in Coconino County,  bring this lawsuit seeking declaratory, injunctive and monetary relief to redress the injuries they suffered as a result of the Defendants' racially-based stop, detention, seizure and search of them.  In the manner described herein, Defendants under color of state law, stopped, detained, seized and searched the cars in which Plaintiffs were traveling, on the basis of their race.  Defendants' actions were intentional and violated the Fourth and Fourteenth Amendments to the United States Constitution, the right to travel, as protected by the Commerce Clause and the Privileges and Immunities Clause of Article IV and the Fourteenth Amendment, Title VI of the Civil Rights Act of 1964 and its implementing regulations, and 42 U.S.C. § 1983.  In addition to seeking compensatory and punitive damages, Plaintiffs seek declaratory and injunctive relief requiring Defendants to desist from and remedy these illegal race-based practices.

**II.  Jurisdiction and Venue**

This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, and 2201.

4

Create PDF with GO2PDF for free, if you wish to remove this line, click here to buy Virtual PDF Printer

Venue is proper in the District of Arizona, as Defendant Arizona Department of Public Safety is headquartered there and the conduct which gives rise to this action occurred within that District. 28 U.S.C. § 1391 (b). Each claim herein arises out of an incident that occurred on an interstate in the State of Arizona and involves officers employed by Arizona Department of Public Safety (DPS).

III.  **Parties**

A.  *Plaintiffs*

Plaintiff, VERONICA ARNOLD, is a citizen of the United States, a Black female and resident of Missouri. Plaintiff was stopped, detained and searched by Defendants while traveling on the interstate highways in Coconino County, Arizona.

Plaintiff, ANTHONY DORSETT, is a citizen of the United States, a Black male and resident of Pennsylvania. Plaintiff was stopped, detained and searched by Defendants while traveling on the interstate highways in Coconino County, Arizona.

Plaintiff, VINCE EDWARDS, is a citizen of the United States, a Black male and resident of California. Plaintiff was stopped, detained and searched by Defendants while traveling on the interstate highways in Coconino County, Arizona.

Create PDF with GO2PDF for free, if you wish to remove this line, click here to buy Virtual PDF Printer

Plaintiff, JIM LEE, is a legal resident of the United States, a Black male and resident of Pennsylvania.  Plaintiff was stopped, detained and searched by Defendants while traveling on the interstate highways in Coconino County, Arizona.

Plaintiff, JESUS SAGRERO, is a citizen of the United States, a Hispanic male and resident of California.  Plaintiff was stopped, detained and searched by Defendants while traveling on the interstate highways in Coconino County, Arizona.

Plaintiff, RAUL SALAZAR, is a citizen of the United States, a Hispanic male and resident of California.  Plaintiff was stopped, detained and searched by Defendants while traveling on the interstate highways in Coconino County, Arizona.

Plaintiff, GREG STEPHEN, is a citizen of the United States, a Black male and resident of Virginia.  Plaintiff was stopped, detained and searched by Defendants while traveling on the interstate highways in Coconino County, Arizona.

Plaintiff, FRANK VILAS, is a citizen of the United States, a Hispanic male and resident of Florida.  Plaintiff was stopped, detained and searched by Defendants while traveling on the interstate highways in Coconino County, Arizona.

6

Create PDF with GO2PDF for free, if you wish to remove this line, click here to buy Virtual PDF Printer

**B.**   *Defendants*

Defendant, ARIZONA DEPARTMENT OF PUBLIC SAFETY

(DPS), headquartered in Phoenix, is in charge of patrolling state highways through

its Highway Patrol Bureau.  Upon information and belief the Department of Public

Safety receives federal funds for drug interdiction through the Department of

Justice's Drug Control and System Improvement Grant Program,  pursuant  to 42

U.S.C. *§* 3751.  Upon information and belief, DPS further receives funds through

other federal programs.  As a recipient of federal funds DPS is required to conduct

its activities in a racially non-discriminatory manner, pursuant to Title VI of the

Civil Rights Act of 1964 and its implementing regulations, including 28 C.F.R. B

42.1.1 *et seq.*

Pursuant to ARS § 41-1701 *et seq.*, Defendant, GOVERNOR JANE

HULL, serves as Chief Officer of the Arizona Department of Public Safety and the

Director of the Arizona Department of Public Safety is responsible to her for,

among other things, executing her lawful orders, with regard to the functioning of

the DPS.  Accordingly, Defendant, GOVERNOR JANE HULL, has final authority

and responsibility for the operation of the DPS.  Defendant GOVERNOR JANE

HULL is sued in her official capacity.

Pursuant to ARS § 41-1701 *et seq.*, Defendant, DENNIS GARRETT,

serves as the Director of the Department of Public Safety, responsible for, among

7

Create PDF with GO2PDF for free, if you wish to remove this line, click here to buy Virtual PDF Printer

other things, the control, supervision, operation and administration of the DPS, and for observing, administering and enforcing the provisions of Title 28 of the Arizona Revised Statutes which governs transportation within the State of Arizona and all other laws regulating the operation of vehicles or the use of the Arizona highways.  Defendant, DENNIS GARRETT is further responsible for the appointment of deputies, subordinates, officers, investigations, and other employees as may be necessary to implement the provisions of the Arizona transportation laws.  Defendant DENNIS GARRETT is sued in his official capacity..

Pursuant to ARS § 41-1701 *et seq.*, Defendant, LT. COLONEL WILLIAM REUTTER, serves as Assistant Director of the Highway Patrol Bureau, which has primary law enforcement authority respecting traffic-related offenses upon the National System of Interstate and Defense Highways.  Defendant, LT. COLONEL WILLIAM REUTTER,  is responsible for, among other things, control, supervision, operation and administration of the Arizona Highway Patrol Bureau.  Defendant, LT. COLONEL WILLIAM REUTTER, is sued in his official capacity.

Upon information and belief, Defendants, Officer JOHN ADAMS, Officer JEFF BROWNLEE, Officer CASEY KASUN, Officer HOWARD McDONALD and Officer STEVEN SHROUFE and Defendants JOHN and JANE

Create PDF with GO2PDF for free, if you wish to remove this line, click here to buy Virtual PDF Printer

DOES, Numbers One through Fifty (collectively, the "Officer Defendants"), are, or were at times pertinent to this action, Arizona Highway Patrol Officers. The actions of the Officer Defendants of which the Plaintiffs complain all were taken under color of state law.  The Officer Defendants have conducted traffic control and drug interdiction activities along Arizona roads and highways, including Interstates 40 and 17, at times pertinent to this action. By unjustly and illegally using race, ethnicity, and/or national origin as a basis for carrying out these activities, each of the Officer Defendants has furthered DPS' overall pattern and practice of racially discriminatory law enforcement, and thereby injured the Plaintiffs, as set forth below. In addition, certain of the Officer Defendants have acted pursuant to the unconstitutional DPS policy and practice allowing Officers to detain and search motorists and vehicles by dogs, based only on a Officer's subjective desire to search. Each of the Officer Defendants has acted under the supervision of one or more of the supervisory Defendants.  Each Officer Defendant is named as a Defendant in his or her individual capacity. In addition, each current officer is named as a Defendant in his or her official capacity are sued here in both his individual and official capacities, is a white male or female and resident of Arizona who, at all times pertinent to this action, has been employed by the Arizona Department of Public Safety, in the Highway Patrol Bureau, as an Arizona Highway State Patrol Officer.  All actions taken by Defendant Officers while

Create PDF with GO2PDF for free, if you wish to remove this line, click here to buy Virtual PDF Printer

working as an Arizona State Highway Patrol Officers were taken under color of state law.

## IV.    Class Action Allegations

This is a class action lawsuit seeking declaratory, injunctive, and monetary relief against the Arizona Department of Public Safety and its officers and officials, for engaging in a continuing pattern and practice of race-based stops, detentions, and searches of minority motorists traveling on the interstates through Coconino County, Arizona.  Plaintiffs are minority motorists who -- due to Defendants' custom and practice of discrimination -- unlawfully and unreasonably have been stopped, detained and/or searched, ostensibly for drugs or weapons. Claims are brought pursuant to the Fourth and Fourteenth Amendments to the Constitution of the United States, 42 U.S.C. & §§ 1983 and Title VI of the Civil Rights Act of 1964, 42 C. F.R. & §§ 42.101 *et seq.*

For the purposes of all relief sought in this case, Plaintiffs bring this action pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, on behalf of themselves and all other persons similarly situated. Each of these individual class representatives is a minority motorist who has been stopped, detained, and/or searched by one or more DPS Officers while traveling through Arizona on the interstate highway system. Thus, each is a member of the proposed class.

Create PDF with GO2PDF for free, if you wish to remove this line, click here to buy Virtual PDF Printer

In addition to serving as class representatives, named Plaintiffs, seek to serve as representatives of the sub-class of the Plaintiff class that was, or will be, subjected to a search by a drug-detecting dog, in challenging the constitutionality of Defendants' policy of allowing dog searches without probable cause or articulable suspicion. Named Plaintiffs Arnold, Dorsett, Edwards, Lee, Sagrero, Salazar, Stephen, and Vilas all were searched by a DPS dog, pursuant to DPS' policy of allowing dog searches at an Officer's individual and standardless discretion.

The class which Plaintiffs seek to represent consists of all innocent minority motorists who have been since January 1, 1997, or who will be in the future, illegally stopped, detained, and/or searched by Arizona Highway Officers on the interstate highway system, without just cause and based upon their race and/or national origin.  The Plaintiff sub-class referenced in the previous paragraph consists of all Plaintiff class members who also were searched by a drug-detecting dog.

The number of minority motorists who in the past have been or in the future will be discriminated against by DPS' arbitrary and race-based policy, custom, and practice is too numerous for practicable joinder.

There are questions of law and fact common to all members of the class and all class members are and/or will be directly affected by the challenged

11

Create PDF with GO2PDF for free, if you wish to remove this line, click here to buy Virtual PDF Printer

actions of the Defendants. Each putative class member has been or will be subjected to arbitrary, racially discriminatory stops, detention, and/or searches conducted by DPS on the interstate highway system in Arizona. These common questions predominate over any minor potential variances in the circumstances of the individual stops, detentions and/or searches.

The claims of the representative Plaintiffs are typical of the claims of the class as a whole. Each named Plaintiff has in the past and will in the future travel through Arizona on the interstate highway system. Each named Plaintiff has experienced in the past and may likely again experience in the future Defendants' pattern and practice of race-based detentions, seizures, and/or searches of minority motorists. The experiences of the Plaintiffs at the hands of DPS Officers and their risk of future harm from Defendants' policy and practice of discrimination render their claims typical of those faced by the class of minority motorists they seek to represent.

Plaintiffs will be adequate representatives of the class in that all of the relevant questions of fact and law applicable to the class also apply to each of them. Plaintiffs will responsibly and vigorously pursue the claims of the class. They are adequately represented by counsel who has litigated several class action civil rights cases in this Court (including the cases of *Manybeads, et al. v. United States of America, et al.*, CV 88-410 PCT-EHC; *Attakai v. United States of*

Create PDF with GO2PDF for free, if you wish to remove this line, click here to buy Virtual PDF Printer

*America, et al.*, CV 88-0964 PCT-EHC; and *Davis, et al. v. Richards, et al.*, CV 76-278 PCT-MS) and who are familiar with the applicable law.

As with the claims of the class, the claims of the sub-class are appropriate for adjudication on a class-wide basis. First, the sub-class is too numerous for practicable joinder. Second, there are questions of law and fact common to all sub-class members, and these common questions predominate over any individual issues. Each sub-class member has been or will be subjected to a search by a drug detecting dog, pursuant to Defendants' policy authorizing dog searches without probable cause or articulable suspicion. Third, the claims of individual sub-class representatives Arnold, Dosett, Edwards, Lee, Sagrero, Salazar, Stephen, and Vilas are typical of those of the sub-class, in that each has been stopped, detained, and/or searched by Defendants' without reasonable cause, in violation of the Fourth Amendment's guarantee against unreasonable searches and seizures. Finally, Plaintiffs Arnold, Dorsett, Edwards, Lee, Sagrero, Salazar, Stephen, and Vilas and their counsel will adequately and vigorously represent the interests of the sub-class.

Individual members of the putative class and sub-class have not indicated any desire to pursue their claims independently of the class, and to Plaintiffs' knowledge, there currently exists no pending civil litigation of claims by individual class or sub-class members.

Create PDF with GO2PDF for free, if you wish to remove this line, click here to buy Virtual PDF Printer

The prosecution of separate actions by individual members of the class or sub-class would create a risk of adjudications which would be inconsistent or varying with respect to the individual class members, establishing incompatible standards of conduct for the Defendants, or which would as a practical matter be dispositive of the interests of other members of the class or sub-class who are not parties to the adjudication.

Separate actions also would create a risk of adjudications disposing of interests of unnamed parties or impairing their ability to protect their interests. Unnamed minority motorists who have previously been stopped, detained, and searched, and whose identities are known only to the Defendants, as well as those who will in the future be stopped, detained, and searched under Defendants' arbitrary and discriminatory policy, should be protected against illegal discrimination perpetrated by the Arizona Department of Public Safety.

This action is properly maintained as a class action inasmuch as the questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The Defendants have engaged in an unlawful pattern and practice of discrimination in highway stops and searches that is generally injurious to the class.  Moreover, Defendants threaten to continue this illegal pattern and practice in the future,

Create PDF with GO2PDF for free, if you wish to remove this line, click here to buy Virtual PDF Printer

toward both the named Plaintiffs and the class of unnamed and as yet unidentified

minority motorists.

**Factual Allegations**

### A.    *Pattern and Practice of Racial Profiling*

Plaintiffs have all been stopped, detained and searched by Arizona

Department of Public Safety (DPS) Officers as a result of the officer's selective

enforcement of traffic laws used as a pretextual basis to stop Black and/or Hispanic

motorists as part of DPS' drug interdiction effort.  DPS' pattern and practice of

race- based vehicle stops has resulted in a significantly disproportionate number of

minority motorists being stopped, detained and subjected to search.  The factual

circumstances of Plaintiffs' individual stops, detentions and searches by DPS

officers are virtually identical because they result from of a nationwide drug

interdiction training program initiated by the Drug Enforcement Administration

(DEA) several years ago which instructs officers to stop Black, Hispanic and other

minority motorists in hopes of ultimately locating illegal drugs or other

contraband.  The DEA training program known as "Operation Pipeline" has been

taught to DPS officers over the last decade and these drug interdiction training

techniques and programs continue to be taught by both federal and state law

enforcement agencies.

Create PDF with GO2PDF for free, if you wish to remove this line, click here to buy Virtual PDF Printer

The factual similarities in Plaintiffs' cases which result from the Operation Pipeline and related drug interdiction training programs like "Operation Desert Snow" which the Defendant Officers have also attended, includes the following.  [1] All of the Plaintiffs were stopped while traveling eastbound on interstate highways through Coconino County, Arizona.  [2] The stops were all made by officers of the Arizona Department of Public Safety (DPS).  [3] All Plaintiffs are either Black or Hispanic. [4] The DPS officers who stopped, detained and search Plaintiffs had all received Operation Pipeline or related drug interdiction training.  [5] The Defendant Officers had all been trained to use minor traffic law violations as a justification or pretext to stop a high volume of minority motorists traveling on the interstate in hopes of discovering illegal drugs, guns or money.  [6] Following the initial traffic stop for the alleged minor traffic violation, all Plaintiffs were subjected to intense interrogation regarding their travel itinerary, background, purpose for traveling and other issues unrelated to the alleged traffic violation.  [7] All Plaintiffs were issued a warning rather than a ticket to avoid creating a "paper trail" of public records of the stop, detention and search.  [8] The officers use of the warning rather than a ticket also indicates that the alleged basis for the stop was not considered to be a significant violation by the officer.  [9] All of the Plaintiffs were advised that the traffic stop was completed and that they were free to leave.  [10] In each case, when Plaintiffs attempted to leave they were

Create PDF with GO2PDF for free, if you wish to remove this line, click here to buy Virtual PDF Printer

stopped a second time by the Defendant Officers without reasonable suspicion of criminal activity and interrogated regarding the possible presence of drugs, guns or money in their vehicles.  [11] All Plaintiffs were then asked for consent to search their vehicles despite the absence of any credible evidence of criminal activity. [12] If Plaintiffs consented to the unlawful search the Officers then conducted an extensive search of Plaintiffs' vehicles and personal property. [13]  If Plaintiffs asserted their constitutional rights and declined to consent to the unlawful search, Plaintiffs were then detained against their will until a DPS drug detection canine could be brought to the stop location and conduct a canine sniff/search of Plaintiffs' vehicles and personal property.

## B.    *Related State Court Criminal Cases*

Those Plaintiffs that were arrested following the search of their vehicle have raised a claim of racial profiling and selected enforcement of the law as a defense to the criminal charges filed against them.  Several of these criminal cases have been consolidated in the Coconino County Superior Court for consideration of the racial profiling claims.   Much of the evidence presented in these State Court criminal cases is relevant to Plaintiffs' claims in this action.

In order to establish the racial profiling claims, those Plaintiffs facing criminal charges have retained the services of Dr. John Lamberth, a Professor at Temple University.  Dr. Lamberth is widely recognized as a leading expert on the

17

Create PDF with GO2PDF for free, if you wish to remove this line, click here to buy Virtual PDF Printer

use of statistical evidence to determine whether or not a pattern and practice of stopping a disproportionate number of minority motorists, in fact, exists.  Dr. Lamberth has served as an expert witness in many of the nation's leading racial profiling cases, including *New Jersey v. Soto et al.*, and *Wilkins v. Maryland State Police*.

To determine whether there is a colorable basis for asserting the racial profiling claim, Dr. Lamberth conducted an analysis of the racial composition of persons known to have been stopped by DPS officers on Interstate 40 in Coconino County.  In addition, Dr. Lamberth conducted a preliminary violator survey to determine the racial composition of person observed to be committing a traffic violation while traveling on Interstate 40 in Coconino County.  Dr. Lamberth concluded that Black motorists who were observed to have violated traffic laws on Interstate 40 were far more likely to be stopped than were White motorists who were committing similar traffic violations.

Based upon the preliminary statistical analysis, Dr. Lamberth found that Black motorist comprised 2.9% of those motorists who were observed violating a traffic law.  This data compared with the racial identity of 68 motorists known to have been stopped and arrested on Interstate 40 by DPS officers.  Dr. Lamberth found that while 2.9% of motorists observed to be violating a traffic law were Black, 26.5% of the 68 known cases involved Black motorists.

Create PDF with GO2PDF for free, if you wish to remove this line, click here to buy Virtual PDF Printer

Dr. Lamberth concluded that the percentage of Black motorists stopped on Interstate 40 is significantly higher than the percentage of Black motorists observed violating traffic laws.  Dr. Lamberth also found that the percentage of Hispanics stopped on Interstate 40 by DPS officers was statistically higher than the percentage of Hispanics observed violating the law.

Dr. Lamberth testified regarding his research and analysis during an evidentiary hearing that was conducted during November and December 2000 in the Coconino County Superior Court cases.  The State did not produce any evidence countering Dr. Lamberth's presentation.  The State presented no surveys or statistics of its own but instead sought to impeach the validity of Dr. Lamberth's methodology, analysis and conclusions through the testimony of its own expert, Dr. Jeffrey Wilson, a Professor at Arizona State University.  In rebuttal, Dr. Frederick Solop, the Director of Northern Arizona University's Social Research Laboratory, testified that he had reviewed the methodology, analysis and conclusions of both Dr. Lamberth and Dr. Wilson and that he found Dr. Lamberth's conclusions to be valid and compelling.  Further, that he found Dr. Wilson's critique to be without merit.

Based on this evidence, the two Superior Court judges hearing the consolidated racial profiling cases ruled, on March 2, 2001, that the motorists had established a "colorable claim" of racial profiling entitling them to additional

Create PDF with GO2PDF for free, if you wish to remove this line, click here to buy Virtual PDF Printer

disclosure of DPS records and documents regarding traffic stops on Arizona interstate highways.  The Superior Court judges ordered that the State produce its records and data for all traffic stops occurring between June 1999 and June 2000.

In response to the Court's order, the State disclosed that DPS had "inadvertently" destroyed all data for traffic stops occurring on interstate highways in Coconino County from 1997 through January 2000.  The Court then ordered the State to disclose all remaining data of traffic stops made on the interstates in Coconino County from January 2000 through January 2001.  The stop data which consists of written warnings and/or tickets is currently being reviewed and analyzed by experts for both the defendant motorists and the State of Arizona.  It is anticipated that the results of this analysis will be completed by Fall 2001.  An evidentiary hearing on the merits of the racial profiling claims is expected to occur later this fall or winter.

Given the strength of Defendants' continuing unconstitutional *de facto* policy of raced-based traffic stops, detentions and searches and  the failure of Defendants to appropriately train, supervise and/or discipline officers and thereby discourage such behavior, Plaintiffs and the members of the proposed class of Plaintiffs realistically expect to be subjected again to race-based traffic stops at the hands of the Arizona Department of Public Safety during future visits to Arizona.

Create PDF with GO2PDF for free, if you wish to remove this line, click here to buy Virtual PDF Printer

Defendants' denial of a continuing practice and policy of race-based traffic stops creates a case and controversy warranting resolution by this Court.

## V.    Claims for Relief

**Count I**

**Equal Protection**
(Fourteenth Amendment)

(All Defendants except Arizona Department of Public Safety)

Plaintiffs repeat and reallege paragraphs 1 through 44, as set forth fully herein.  Defendants, acting under color of law and in concert with one another, engaged in intentional race discrimination in their drug traffic patrol and interdiction efforts carried out in Arizona along the state's highways.  In so doing, Defendants have caused the Plaintiffs to suffer deprivation of their fundamental rights to liberty and to be free from unlawful searches and seizures, on account of the minority race and/or national origin.  These actions violated Plaintiffs' right to equal protection of the laws, in violation of the Fourteenth Amendment to the Constitution of the United States.

The Defendants' acts were intentional and done in violation of Plaintiffs' legal and constitutional rights, and have directly and proximately caused Plaintiffs humiliation, mental pain, and suffering.

Create PDF with GO2PDF for free, if you wish to remove this line, click here to buy Virtual PDF Printer

**Count II**

**Unreasonable Search and Seizure**
(Fourth and Fourteenth Amendments)
(All Defendants except Arizona Department of Public Safety)

Plaintiffs repeat and reallege paragraphs 1 through 47, as set forth fully herein.

Defendants, acting under color of law and in concert with one another, subjected Plaintiffs to illegal detention and search without probable cause or reasonable suspicion to believe that any crime had been committed in violation of the Fourth Amendment guarantee against unreasonable searches and seizures. Those actions give rise to Plaintiffs' claims pursuant to the Fourth and Fourteenth Amendments to the Constitution of the United States.

The Defendants' acts were intentional and done in violation of Plaintiffs' legal and constitutional rights, and have directly and proximately caused Plaintiffs humiliation, mental pain, and suffering.

**Count III**

**Right to Travel**

(Commerce Clause, Article IV, and Fourteenth Amendment)
(All Defendants Except Arizona Department of Public Safety)

Plaintiffs repeat and reallege paragraphs 1 through 50, as set forth fully herein.

Create PDF with GO2PDF for free, if you wish to remove this line, click here to buy Virtual PDF Printer

Defendants, acting under color of law and in concert with one another, have caused the Plaintiffs to be penalized and deterred in the exercise of their fundamental right to interstate travel and migration on account of their race and/or national origin.  These actions violated Plaintiffs' right to travel, in violation of the Commerce Clause and the Privileges and Immunities Clauses of Article IV and the Fourteenth Amendment.

Defendants' acts were intentional and done in violation of Plaintiffs' legal and constitutional rights, and have directly and proximately caused Plaintiffs humiliation, mental pain, and suffering.

**Count IV**

**Race Discrimination in Federally Funded Programs**

(Title VI of the Civil Rights Act of 1964 and 42 C.F.R. *§§ 101 et seq.*)
(Defendant Arizona Department of Public Safety)

Plaintiffs repeat and reallege paragraphs 1 through 53, as set forth fully here.

Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, provides that "[N]o person in the United States shall, on the ground of race color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance."

Create PDF with GO2PDF for free, if you wish to remove this line, click here to buy Virtual PDF Printer

Federal Regulations implementing Title VI further provide that no program receiving financial assistance through the U. S. Department of Justice shall utilize criteria or methods in its administration which have the effect of subjecting individuals to discrimination because of their race, color, or national origin, or have the effect of defeating or substantially impairing accomplishment of the objectives of the programs with respect to individuals of a particular race, color, or national origin. 28 C.F.R. § 42.104 (b)(2).

The traffic patrol and drug interdiction methods employed by the Arizona Department of Public Safety discriminate against Black and Hispanic motorists and other minority motorists traveling through Arizona, including Plaintiffs, as described herein.

Defendant, Arizona Department of Public Safety's, violation of 42 U.S.C. § 2000d and its implementing regulations has caused and will continue to cause the named Plaintiffs and other similarly situated minorities to suffer tremendous harm and public humiliation in that they have been and will continue to be subjected to the DPS' Highway Patrol Bureau's continuing practice of race-based discrimination unless it is stopped.

## VI.   **Prayer for Relief**

WHEREFORE, Plaintiffs request that this Court:

Create PDF with GO2PDF for free, if you wish to remove this line, click here to buy Virtual PDF Printer

(a) Declare, pursuant to 28 U.S.C. § 2201 and 2202, that Defendants' official policy authorizing Arizona Highway Patrol Officers, at their individual discretion and without probable cause or reasonable, articulable suspicion of criminal activity, to detain motorists for the purpose of conducting a search with the assistance of a drug-detecting dog, is unconstitutional on its face and as applied, in that it has resulted in unjustified stops, detentions and searches, including those of Plaintiffs, in violation of the Fourth and Fourteenth Amendments to the Constitution of the United States, the constitutional right to travel on the roads and highways of Arizona, and 42 U.S.C. § 1983;

(b) Declare, pursuant to 28 U.S.C. §§ 2201 and 2202, that Defendants have engaged in race discrimination and denied Plaintiffs the equal protection of the laws, with respect to the stop, detention and search of Plaintiffs, in violation of the Fourteenth Amendment to the Constitution of the United States;

(c) Declare, pursuant to 28 U.S.C. §§ 2201 and 2202, that Defendants detention and search of Plaintiffs without probable cause or reasonable, articulable suspicion to believe that a crime had been committed or was imminent, violated the Fourth Amendment's guarantee against unreasonable searches and seizures, and the Fourteenth Amendment;

Create PDF with GO2PDF for free, if you wish to remove this line, click here to buy Virtual PDF Printer

(d) Declare, pursuant to 28 U.S.C. *§§* 2201 and 2202, that Defendant's conduct violated the rights of Plaintiffs to travel interstate, in violation of the Commerce Clause and the Privileges and Immunities Clauses of Article IV, and the Fourteenth Amendment;

(e) Declare, pursuant to 28 U.S.C. *§§* 2201 and 2202, that Defendants have engaged in race discrimination with respect to the stop and search of Plaintiffs described herein, in violation of Title VI of the Civil Rights Act of 1964 and 42 C.F.R. *§* 101 *et seq.*;

(f) Enjoin Defendants immediately to discontinue such race-based discrimination as described herein, and to put into place safeguards, including the maintenance of records for every stop conducted by the DPS, containing, inter alia, the name, race, reason for the stop, and whether or not a search was conducted sufficient to ensure that such discrimination does not continue in the future;

(g) Enjoin Defendants immediately to amend their continuing unconstitutional custom, policy or practice allowing DPS officers to detain motorists and conduct dog searches without reasonable, articulable suspicion of criminal activity;

Create PDF with GO2PDF for free, if you wish to remove this line, click here to buy Virtual PDF Printer

(h) Award Plaintiffs compensatory and consequential damages pursuant to Count IV, in an amount to be determined at trial, against Defendants Arizona Department of Public Safety;

(i) Award Plaintiffs compensatory and consequential damages pursuant to Counts I, II, and III, in an amount to be determined at trial, against the individual Defendants, jointly and severally, in the individual capacities only;

(j) Award Plaintiffs punitive damages pursuant to Counts I, II, and III, in an amount to be determined at trial, against the individual Defendants, jointly and severally, in their individual capacities only;

(k) Award Plaintiffs their costs and attorneys' fees incurred in pursuing these actions, as provided in 42 U.S.C. § 1988;

(l) Grant such other and further relief as the Court may deem just and proper.

## VII.  **Jury Demand**

Plaintiffs hereby demand a trial by jury.

RESPECTFULLY SUBMITTED this 15th day of March, 2006.

By____s/Lee Phillips
Lee Phillips
Reginald T. Shuford
Dan Pochoda
Attorneys for Plaintiffs

27

Create PDF with GO2PDF for free, if you wish to remove this line, click here to buy Virtual PDF Printer

Original of the foregoing filed electronically with the court and
mailed/delivered/faxed this 15th day of March, 2006, to:

U.S. Magistrate Lawrence O. Anderson


Michael H. Hinson
Daniel J. Stoops
Franklin J. Hoover
Attorneys for Defendants
Mangum, Wall, Stoops & Warden, P.L.L.C.
100 North Elden Street
P.O. Box 10
Flagstaff, Arizona 86001

s/Vivian Johns
_____
Vivian Johns

28

Create PDF with GO2PDF for free, if you wish to remove this line, click here to buy Virtual PDF Printer